## PLEASANT HILL MOTOR CO. v. HAIRE.

### No. 4139.

Court of Appeal of Louisiana. Second Circuit, Second Division.

June 11, 1932.

See, also, 140 So. 129.

Rusca & Cunningham, of Natchitoches, for appellant.

D. J. Hyams, of Natchitoches, for appellee.

CULPEPPER, J.

This action was brought on an open account in the sum of $112.95 for gasoline, lubricating oil, tires, tubes, automobile parts and accessories, and for labor and services performed on defendant's automobile, as per itemized statement attached to petition, for which it is alleged that defendant owes plaintiff. It is not alleged in the petition that these articles were sold or delivered to defendant. The itemized statement, however, shows they are charged in his name.

Defendant made general denial, and averred that he never bought from plaintiff any of the items charged on the account, and that, if same were bought by any other person and charged to defendant, it was done without his knowledge or consent, and without his authorization. There was judgment rejecting plaintiff's demands, and it has appealed.

The testimony shows by a preponderance that the items called for in the account were purchased by and delivered to defendant's son, Floyd Haire, who at the time was seventeen or eighteen years of age.

Mr. Yearwood who together with T. M. Butler as partner composed the partnership, styled "Pleasant Hill Motor Company," plaintiff herein, testified that the company sold defendant a Ford touring car in 1926, after which they did certain repair work for defendant on the car, and sold him gas and oil and tires, as represented and shown by the account; that defendant called at their place of business in the beginning and asked for credit, and that they extended it to him on terms of thirty days' time. Yearwood testifies he presumes his company mailed monthly statements to the defendant, as it was the custom to mail statements to all of their customers every month.

On cross-examination Mr. Yearwood admits that defendant's son, Floyd Haire, bought all of the items called for on the account, except the first purchase, which he says was made by defendant himself. Plaintiff's position appears to be that defendant personally came and arranged for a line of credit with the understanding that his son, who did the driving of the car, was to be given gas, oil, etc., and the charges were to be made to defendant. Defendant testified positively that he made no such an arrangement with plaintiff. He admits the car for which his son made the purchases belonged to him; that it was driven exclusively by his son Floyd and used as a family car. But he says that every time he himself made a purchase at plaintiff's he would then and there settle for it, unless on a few occasions he did not pay for it for two or three days or a week, but always paid up in full—"left a clean slate," as he expressed it. He testifies that he knew nothing of plaintiff's running an account in his name; that he never received any notices of statements from plaintiff; that his attention was never called to it, and no request was ever made on him for pay until in the fall of 1928, something like a year and a half after the account was closed or discontinued, when Mr. Yearwood came to his home and requested defendant to give a note for the

amount. Defendant states that he then told Mr. Yearwood: "You can't hold me responsible on the boy. If you considered I owed it, you would not have taken the boy's note."

Defendant's son had some time previous signed and delivered his personal note to plaintiff for the amount, and plaintiff still held the note, and had made at least two written demands upon the boy to pay it. These two demands are filed in evidence by defendant, and show plainly that plaintiff considered the boy as being the debtor. They show the due date of the note as being February 1, 1927. One demand was dated October 7, 1927, and the other February 14, 1928; both addressed to Floyd L. Haire, and reading:

"Dear Sir: Your payment on note given us as purchase on Ford car was due Feb. 1, 1927—

| | |
|---|---|
| Amount, | $112.95 |
| Interest, | 8.40 |
| Total, | 121.35 |

"We will greatly appreciate your giving this matter the attention it justly deserves, on or before the due date, as we have obligations to meet, and if you do not pay yours, we cannot pay ours. Yours very truly,

"Pleasant Hill Motor Company,
"By T M Butler—G."

The above is copied from the first notice. The second is of like tenor, except as to its date and amount of accrued interest. Certainly, if we are to take these writings as binding on plaintiff company, they evidence either one or the other of two things—that plaintiff considered the debt originally as the debt of Floyd L. Haire or subsequently accepted him as the debtor in place of defendant.

Mr. Yearwood says that a Mr. Roper accepted the note, and that he had no authority to bind the company or to release or liquidate any account, because he was employed by plaintiff as their "parts man," working "in the parts department." He admits, however, that Mr. Roper had charge of the business at times when he and his partner, Mr. Butler, were absent, admits keeping the note, and does not deny the authenticity of these two notices that were mailed out to Floyd L. Haire. He explained that the note was only taken as additional security on the account. The note is not in the record, and we do not know whether it stipulates that it was taken as security or not. It was still in plaintiff's possession at time of the trial, and could easily have been produced to show whether such was the case. It is to be presumed that it does not.

Mr. Butler, the other partner in the business, did not appear as a witness, and no explanation was made as to why he did not appear. Neither did Mr. Roper appear, and it is not shown that any effort was made to secure his appearance, or to have his testimony taken out of court, although it is shown that he resided in Monroe, La., at the time of the trial.

Floyd Haire, defendant's son, appeared and testified that the account was his own and not his father's; that he personally bought and had charged to himself each item called for on the account; that he made the payments shown as credits thereon; that it was understood between him and his father that he was to pay for everything he bought for the car, as his father was unwilling to pay for gas and oil, and parts and repairs, incidental to his use of the car, and told him so to start with. Floyd testified that he received occasional statements of the account from plaintiff, none of which showed that the account was being run in his father's name. He states that on the occasion that he gave the note Mr. Roper requested him to pay the account, and he told him he could not, then Mr. Roper fixed up the note, and he (Floyd) signed it; that the note was for the exact amount called for by the account, and was given and received in settlement of the account. He states that at no time did any one connected with plaintiff's business intimate to him that the items he was buying were being charged to his father or that they were looking to his father for pay. He states that at times when he would take his father on trips "like to Shreveport" his father "would go in and pay for that," meaning for the gas and oil used on such occasions. These are the purchases which defendant testified that he himself paid for either in cash at the time or a few days later.

In view of the testimony of both defendant and his son being in contradiction to Mr. Yearwood's lone testimony, we think plaintiff has failed to establish its case against this defendant by the preponderance which the law requires. It would seem that plaintiff intrusted the payment of the account to Floyd Haire until it appeared that there was no chance to collect from him, then conceived the idea of trying to hold defendant responsible. This, we think, plaintiff cannot now do under all the circumstances as disclosed by the record in the case. It appears that it was with some reservation that plaintiff undertook to hold defendant liable by reason of the fact that it did not come right out in the petition and allege that it sold or delivered the merchandise to him.

Judgment affirmed.